## No. 8772.

### JOHN CHAFFE & SONS FOR THEMSELVES AND FRANK & CO. vs. THOMAS H. HANDY ET AL.

Under the provisions of Art. 730 C. P. a *capias ad satisfaciendum* can issue against a *former* sheriff, whenever a judgment has been rendered against him for moneys received by him, in his official capacity and not accounted for and the *fieri facias* issued has been returned "no property found."

Under such writ, it is the duty of the sheriff. to whom it is addressed, to arrest and incarcerate the body of the defaulting official and to retain it, without the benefit of the insolvent laws, at the expense of the judgment creditor, until the amount of the judgment, in capital, interest and costs, has been fully satisfied.

The act of 1840, abolishing imprisonment for debt, has no effect on the act of 1841, providing for imprisonment of delinquent sheriffs and which is now Art. 730 C. P.

Previous decree undisturbed.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus,* J.

---

*W. S. Benedict* for Plaintiff and Appellant.

*Nicholls & Carroll* for Defendant and Appellee:

Frank & Co. are not parties to the judgment and though they may be beneficially interested in it. they cannot control the execution.   5 N. S. 707 : 24 A. 549.

Chaffe & Sons and Frank & Co. vs. Handy et al.

The judgment as rendered is indivisible and must be so executed. Any beneficial interest which Frank & Co. may have therein, can only be settled *dehors* the judgment, through settlement by them with Chaffe & Sons.

The judgment establishes on its face an interest by Chaffe & Sons therein and there is no evidence of any severance of interest, even were such severance permissible.

If Frank & Co could have had any standing at all in court, it could only have been as joining Chaffe & Sons; they could not originate proceedings or act singly. Were they permitted to do so, they would control the actual plaintiff and determine the mode of execution, inasmuch as a judgment cannot be executed at one and the same time in different ways, by different persons, and inasmuch as a writ of *ca. sa.* (where it is known), issuing at the instance of one person, rightfully controlling the execution of a judgment, excludes, so *long as it is adhered to*, the issuing of a *fi. fa.* at the *instance of another person.*

The court is without power to order the issuing of the writ, as there is no such writ known to the laws of Louisiana, and the ministerial and executive officers of the court would not know to what laws or jurisprudence to have recourse either in framing or executing it, and they are besides without authority to have recourse to any foreign system or code of laws. Courts will not issue orders which subordinates cannot execute. High Extraordinary Remedies, § 14.

The laws in force in 1812 were continued by the 11th section of the 4th article of the Constitution of 1812, only *until they were repealed or abolished* and by the same section the Legislature was prohibited from adopting any system or code of laws by general reference and directed by mandatory instructions to specify the several provisions of the law it should enact.

In 1840, the writ of *capias ad satisfaciendum* was, in express direct terms, abolished, and ceased to be known thenceforward to the laws of Louisiana and could only be revived and reinstated by a substantive direct law, specifying its various provisions, its terms, conditions and other essential elements.

In 1841, a statute, which is now found incorporated as Art. 730 of the Revised Code of Practice of 1870, was passed, directing that, under a certain state of facts, a *capias ad satisfaciendum* should be executed.

That statute does not revive or reinstate the writ, which had been formally abolished. A mere reference to an abolished writ does *not revive it.* Under the 11th section of Art. 4 of the Constitution of 1812, *then in force*, a direct law, specifying the several provisions of the writ was *essentially necessary.*

The statute of 1841 was not self-operating; it required later and additional legislation, to put the writ into operation, which legislation has never been had.

The revision of the Codes in 1870, took place whilst Articles 114, 115 and 116 of the Constitution of 1868 were in effect, and those articles embody the same principles and provisions as those of the 11th section of Art 4 of the Constitution of 1812.

If there be any such writ, it can only issue under the precise circumstances fixed by the statute. There must be as a basis for the writ a judgment in which it is decided and expressed as part of the judgment, and shown on the face thereof that the judgment was rendered against the sheriff as such—that it was for money received by him in his official capacity, that it had been converted by him to his own use, or not accounted for. Carpentier vs. Willett, 6 Bosworth, 25.

Unless a person has such a judgment, *containing such special findings and recitals*, he cannot have the aid of a *ca. sa.* in execution, and if he *takes judgment against a defendant* without seeking to have and actually obtaining such a judgment, he cannot, after judgment, seek to raise, by rule, issues which should have been raised prior to judgment, and decided and recited as decided, if the facts justified.

A judgment rendered without such findings and recitals, evidences either a waiver of the remedy or an adverse decision as to the facts which might authorize a capias. The demand culminating in a mere ordinary judgment for debt, closes and silences all claims to an extraordinary remedy or to any remedy, other than the ordinary remedy by a *fi fa.* to pay a moneyed judgment. After judgment, such a writ cannot be authorized by a subsequent order rendered on a rule *nisi.* as after judgment the judge has no power to make such an order. Carpentier vs. Willett, 6 Bosworth (N. Y.), 25.

The writ of *capias ad satisfaciendum,* if allowable at all against a sheriff or public officer, is allowable only when the situation is such that at the time of the rendition of the judgment and the issuing of the writ the party sued occupies official relations with the Court as a sheriff or public officer. and the judgment is found against him, *eo nomine,* and officially as such. and the judgment must have been obtained in the very suit in which the moneys have been received as sheriff, and through the penal and official summary remedy directed against an official as such.

A person who brings against a former sheriff an ordinary action for debt on his bond, joining the sureties on the bond, and obtains an ordinary judgment for debt. *in solido,* is authorized to execute it only as any other moneyed judgment.

Unless the judgment is susceptible of execution as to *all* the judgment debtors by a capias. it is not susceptible of execution in that way at all. A *ca. sa.* must strictly pursue the judgment and be warranted by it, and if the judgment be against two or more the *ca. sa.* must issue against all, otherwise it is void.

Blanchard vs. Zacharrie. 15 L. 541 ; Casson vs. Cureton, 12 Martin. 435 ; Howzer vs. Dellinger, 1 Iredel (N. C. L.). 475 : Judson vs. McLelland, Bush (N. C. L.), 262.

If the capias could have issued at all, it could only have issued in the suit of Chaffe & Co. vs. Heyner, and as one of the incidents of that suit. The plaintiffs having left that suit and instituted a new independent substantive action for debt, to which new and original parties were joined, waived any rights or claims they might have to summary and penal actions and penal and extraordinary remedies. A capias is a primary not a secondary remedy.

The proceeding by rule is without warrant. If the parties are justified after judgment in alleging new facts and tendering and having decided new issues as a basis for a capias, they could only do so in an ordinary action and not by or on a rule.

This is either a civil or a criminal proceeding. If a criminal proceeding, it should be by information or indictment and tried by jury. If it be a civil proceeding, it is in conflict with Articles 2, 5, 6, 7, 9 and 11 of the Constitution of 1879.

The law of 1841 is highly penal. It contemplates something besides an official liability or indebtedness by a sheriff; there must not only be an indebtedness, but a conversion by him—a positive wrong—money must have been fraudulently disposed of—there must have been a fraudulent intent. Campbell vs. Creditors. 16 La. 348.

---

The opinion of the Court was delivered by

Todd, J. The facts pertaining to this controversy are briefly these :

John Chaffe & Sons caused an attachment to issue against one Ernest Heyner and had a lot of cotton seized, under the writ, as his property.

Frank & Co. intervened in the suit and claimed to be owners of the cotton.

During the pendency of the suit, the cotton was sold by the sheriff, under an order of the Court, and the proceeds held by this officer to abide the determination of the rights of the parties litigant with respect thereto.

Frank & Co., the intervenors, were decided to be the owners of the cotton.

This sheriff was Thomas H. Handy, the defendant herein. Handy failed to pay over or account for these proceeds upon demand therefor. Thereupon suit was instituted by John Chaffe & Sons for the use and benefit of Frank & Co. against Handy and the sureties on his official bond, for the amount thus withheld and judgment was rendered against him and a number of his sureties, *in solido*, for $4065 80, the amount of the proceeds of the cotton.

On this judgment a writ of *fi. fa.* issued, which was returned "no money or property found."

After this a rule was taken by Frank & Co. on Handy to show cause why a *capias ad satisfaciendum* should not issue and be executed against him.

From a judgment discharging the rule, an appeal was taken by the plaintiff therein, which is now before us for consideration.

This proceeding was instituted under act of 10th February, 1841, now forming Article 730 C. P., which reads:

"Whenever a judgment is rendered against a sheriff or other public officer, for money by him or them received, in his or their official capacity, and converted to his or their own use, or not accounted for, and the writ of *fi. fa.* is returned 'no property found,' a *capias ad satisfaciendum* may be taken out and executed against such defendant or defendants."

Handy excepted to the proceedings, as follows:

1. That Frank & Co. were not plaintiffs in the suit and parties to the judgment, and had no capacity to appear.

From the foregoing statement it will be seen that the cotton, from which the money sought to be recovered was derived, belonged to Frank & Co. and it was so decreed. As such owners and entitled to receive the money derived from its sale, they were parties to the suit against Handy and his sureties. It was for their use and benefit, as the real parties in interest, that the demand was made and the suit brought. The judgment was in their favor, and was such a judgment as contemplated by Art. 730 C. P., above quoted.

The second exception was:

"If Frank & Co. had any capacity to appear at all, they could only do so as joining Chaffe & Sons as plaintiffs."

What has been said with reference to the first exception will apply also to this. As stated, Frank & Co. were the owners of the cotton

sold by Handy and were parties to the suit in which their ownership of. the same was recognized and decreed. As owners of the cotton they alone were entitled to receive its proceeds. The judgment requiring Handy to pay over this money and fixing his liability therefor, was their judgment, with whose collection or enforcement they alone were concerned, and there is no reason why they should have joined John Chaffe & Sons or John Chaffe & Sons should have joined them. The very terms of the law we have cited: "whenever a judgment is rendered against a sheriff," etc., contemplates not that the proceeding for the writ in question should be applied for and "taken out" by a nominal plaintiff, but by the party whose money has been received by the officer. This is manifest.

The third exception was:

" That if they had proper capacity, the proceeding by rule was without warrant in law, was unauthorized, illegal and improper."

*a.* To sustain this proposition, it is urged, in the first place, that the writ of *capias ad satisfaciendum* was repealed in 1840. If so, it was certainly revived in 1841, for the objects and purposes contemplated by the act of that year, and has been continued in operation *quoad hoc* as an article of the Code of Practice. There was not the least necessity of another supplemental act, as suggested, to put the previous one in force, nor to prescribe the form of the writ, since it was a writ which, both under the common law, as well as under our own statutes, had a technically and universally accepted meaning.

*b.* Again, it is contended that the judgment referred to in the article cited, and which must precede an application for the writ in question, must be a judgment rendered in a suit against a sheriff, whilst in possession of his office and performing its functions; and that, in this case, Handy's term of office had expired before any judgment was rendered against him. This objection is disposed of by the decision in the case of Graham vs. Swayne, 9 Rob. 186, where the doctrine is laid down—" that one who retains money deposited in his hands as sheriff, after he has ceased to act as such, will continue subject to the summary process provided by law for the benefit of suitors, where such officers are concerned. By retaining money which he might have deposited in Court, he keeps up his official relations with that tribunal. He continues to act as sheriff *quoad hoc,* and has no right to complain of a mode of pursuit, to which he has voluntarily subjected himself."

*c.* The defendant's counsel further insists that the judgment, which alone could authorize such a writ, must be one rendered in the same suit in which the moneys went into the officer's hands, and not in a

separate suit against the sheriff and the sureties on his bond; and that by the latter mode of proceeding, the summary mode now sought to be pursued was waived.

The law, under which the proceeding is taken, or any other law that we are aware of, makes no such requirement. In fact, to reach the officer in this way, in the same suit in which the moneys were deposited, would be attended with difficulties and would be, in fact, quite irregular. The application for the writ in question must be preceded by a judgment establishing the defalcation of the officer, and a writ of *fi. fa.* on that judgment returned *nulla bona*. These are the conditions precedent to its issuing.

The suit of Chaffe vs. Heyner and judgment therein, simply determined that the moneys arising from the sale of the cotton belonged to the intervenors, Frank & Co. There was nothing in that judgment condemning the sheriff for any default, although he was the depositary of the funds. He refusing to pay over these funds, it became necessary that a judgment should be obtained requiring him to do so. It was by no means clear that such a judgment could be obtained by rule, there is authority against it, 25 A. 360; but granting that it could be done, then the emergency would necessitate the filing in succession of two rules. The first to establish the sheriff's default and fix his liability, upon which a writ of *fi. fa.* might issue. That done, the next to procure a judgment authorizing the capias to issue—for it will be readily seen that the two writs, from the conditions of the law, could not be demanded in the alternative—in the same proceeding; for these very conditions required that the one writ must be exhausted before the other could be asked for. We think, therefore, that the better mode of procedure, if not the only one, to reach the end in view, was by a separate action. Such an action by the *via ordinaria* and after citation and the usual delays, would certainly seem to afford less ground of complaint and be less open to objection on the part of the officer proceeded against, than the quick summary method now so strongly advocated by the counsel for the defendant.

Nor, can we readily see, although the refusal to pay over the money deposited with him and his liability therefor as a defaulter, is the very ground work of such action and the very ground work also of a writ of capias, that, because the sureties on the bond of the officer whose liability depends upon the very same conditions, are made parties to the suit, it not only prevents the judgment rendered therein from serving as a legal basis for the writ, but absolutely destroys the right to that remedy altogether. Such is the contention of the defendant's counsel.

We cannot see that it detracts from the force and effect of this judgment against the officer, if his defalcation is established thereby, because the liability of other parties bound with him is fixed and decreed at the same time or in the same proceeding. The law declares "whenever a judgment is rendered against a sheriff," etc.

It does not limit that judgment to one to be obtained on a rule, or rendered against the sheriff alone, but the substantive fact to be inquired into and the only one for the purposes of the desired writ is whether the judgment established the conditions required, that is, the official delinquency of the officer in converting the money to his own use, or in failing to account therefor.

The counsel cite 11 A. 69, to sustain them in the proposition, that the creditor by seeking or pursuing the milder remedy forfeits his recourse to the harsher one; we have examined that decision and it simply determines that the imprisonment of a fraudulent insolvent debtor will not be ordered where there is no special prayer for so severe a measure.

*d.* Lastly we are told that the judgment against the officer cannot serve as the basis for the writ in question, unless it declares in the face of it, that the amount decreed therein was for money received by the sheriff in his official capacity and had been converted to his own use or not accounted for.

The legal purpose and intendment of a judgment is to measure and fix the liability of the debtor, or determine the amount of money he is to pay. It would be quite anomalous under our system of practice, to have declared in the body of the judgment, the character and consideration of the judgment. It is so well settled by frequent adjudications as to have become almost elementary, that a judgment is to be construed and interpreted by the pleadings. 3 L. 283; 5 L. 287; 14 A. 831; 1 A. 92; 15 A. 679; 16 A. 365.

We must look to the pleadings to find out what the debt adjudged is for. Looking there, what do we find? Examining the petition we see that, after reciting the facts attending the litigation about the cotton and that Frank & Co. had been decreed the owners of it and that the cotton had been sold, it was distinctly and expressly charged (quoting) "that the proceeds have not been paid over by the sheriff, that due demand for payment thereof has been made and said Handy fails to pay, notwithstanding demands, * * * and that said Handy illegally retains said proceeds and refuses to pay them over to petitioners."

The answer is simply a general denial; the defendant puts at issue the grave charges made against him, denies that he has received the money,

denies that he refused to pay it over, denies that he illegally retained it. There is no exculpatory fact or cause alleged, as suggested by his counsel might have existed, such as that the money was deposited in a broken bank or had been paid out on account of the litigants or other special defenses urged to break the force of the charges, or to relieve the acts of the officers of their damaging character, or modify or rebut the alleged defalcation. On this simple issue the judgment was rendered and interpreted by the pleadings: it must be held, whilst fixing the sum of the sheriff's indebtedness, to declare the truth of the charges made and the existence of the facts from which that indebtedness resulted. These were substantially, that the sheriff had converted the money to his own use or had failed to account for it. This judgment was followed by the rule for the capias, in which rule the conditions for obtaining the writ were charged *ipsissimis verbis* of the law referred to and which conditions and charges would again have to be verified by a judicial determination before the writ could be allowed. The defendant met these reiterated charges by exceptions only, having failed to answer. These exceptions constitute the sole defense made to the rule.

A second time there is no attempt to exonerate the officer or justify his failure or refusal charged to account for, or pay over, the funds. The objections should have been overruled and the writ demanded should have been allowed.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed and that the rule be made absolute at the cost of the defendant in both courts.

----

### DISSENTING OPINION.

POCHÉ, J. Believing that one, at least, of the exceptions urged by defendant should have been maintained, I cannot concur in the opinion and decree of the majority in this case.

Among other means of resistance, the defendant charges that, under the character of the judgment rendered against him, he is not amenable to the provisions of the law invoked by plaintiffs.

The writ under consideration is in its nature a penal remedy, and should not be granted in doubtful cases. The laws which provide harsh remedies must not be extended beyond their clear intent and contemplated scope, and must be strictly construed, especially when their application involves the liberty of persons.

The ordinary mode of executing judgments is by means of the writ of *fi. fa*, which is leveled exclusively at the debtor's property; but in cases where the conduct of the debtor is fraudulent and borders on criminality, the law provides a more vigorous and harsher remedy, which extends to the person of the recalcitrant and dishonest public officer.

Under a proper construction of the remedy provided for in Article 730 of the Code of Practice, the judgment condemning the sheriff to pay the money claimed of him should be rendered in the case in which the officer received the funds which he is accused of illegally withholding. The theory of the law is that, as the officer of the court which has control of the funds in litigation, he becomes the depositary of the things involved in the suit, and the remedy to enforce his responsibility therefor is one of the incidents of the controversy. Hence, in the suit of Chaffe vs. Heyner, the party who was adjudicated to be the owner of the proceeds of the cotton had the authority to demand an immediate payment of said funds from the sheriff, and at his bidding the power of the court would have been exerted to compel, even by imprisonment, the performance of the sheriff's duty. In the case of Graham vs. Swayne, 1 R. 186, the party entitled to the funds proceeded in the case, by rule against the sheriff, and obtained judgment. This mode was specially justified by the Court.

But instead of invoking this vigorous proceeding, the party had the option in law to treat the sheriff as his debtor, on account of the funds adjudicated to him, and to enforce payment against the officer and his sureties by means of a direct action and through the recovery of a judgment against them *in solido*.

In choosing to follow this more pacific course, and concluding to rest their chances of recovery on a civil suit, plaintiffs must be understood to have waived the right of exercising the penal remedy which the law had tendered to them in the pursuit of their rights which were involved in the first or original suit.

"The presumption is, when a party fails to invoke such a remedy that he waives it, and the defense is conducted accordingly." Leland & Co. vs. Rose, 11 A. 69.

By their conduct they have elected to meet the defendant face to face on a plane of equality, and to look for the enforcement of their claim against him to his property and to his sureties. Hence, they have severed his responsibility from the original suit and have thus eliminated his official character from the controversy. The law must therefore

restrict the strife to the grounds and to the form selected by the plaintiffs themselves, and it does not favor the capricious return of a creditor to a remedy which he had manifestly waived.

I therefore conclude, with the District Judge, that the plaintiffs in this rule were not entitled to the harsh remedy of imprisonment of this defendant.

Mr. Justice Fenner concurs in this opinion.

## On Rehearing.

Under the pressure of an earnest application for a rehearing, charging that our decision had done the petitioner great legal wrong and injury, we made it our duty to grant the prayer, although *not* convinced of having erred. Benefited by an extended oral argument, in which able counsel have left no stone unturned, we have thoroughly reëxamined the matter previously considered, but have been unable to alter our convictions.

The objections made by defendant to the issuance of a *capias ad satisfaciendum* against him are innumerable and sound more like arguments *ab inconvenienti* than as real defense to the merits. They appear mostly in the oral and printed discussions and are in excess of the exceptions and answer, based on technicalities, which were filed to the rule for the remedy.

The exceptions were taken up and disposed of *seriatim*. We have reviewed the several rulings made on them and have no occasion to question their correctness.

We think proper to add, however, on the exception as to the form, that the decision in Graham vs. Swayne, 1 R. 186, made in 1841, was not, as claimed, rendered on a rule against Charbonnet AS SHERIFF, but against him as "*formerly the sheriff of the parish of Jefferson*," p. 187, and that the same summary proceeding against a *former* sheriff was further sanctioned by this Court in 1855, in Miller vs. Roy, 10 A. 744, under the second Constitution which followed that of 1812, to which reference was made in the argument on the rehearing.

The defense, that the defendant Handy should have been, but was *not*, sued and condemned, *as sheriff*, can have no effect to place him beyond the reach of the remedy invoked against him.

To sanction such a construction of the law would be to put in the power of a dishonest sheriff, after receiving large amounts of money and converting the same to his own use, to shelter himself against suit and prosecution by simply resigning immediately after the breach of

trust and embezzlement.   He would sometimes work a hardship on litigants by requiring from them an impossibility.   In the case at bar, how could it be demanded when the final judgment on rehearing, recognizing Frank & Co. as the owner of the cotton and consequently of its proceeds, was rendered in April, 1879, many months after Handy had ceased to be sheriff?

We do not consider that it was incumbent on plaintiffs to have proved anything beyond what they have established.   If the defendant had any justification or exoneration to set up, he should have announced and proved it.   The burden was upon him and not upon the plaintiffs.   In this he has signally failed.

There can be no doubt that imprisonment for debt has been abolished against ordinary debtors; but the power which has put it out of life, in 1840, in such cases, had the virtue of establishing it, as it subsequently did, in 1841, against a different class of debtors, public officers, actually or formally in office, in order to compel them to an observance of their duties, to a satisfaction of the trust and faith reposed in them by the people or the Executive.

The repealing act of 1840 can surely have no effect on the subsequent act of 1841.

The law invoked may be deemed a harsh one by the defaulting officials who, in their official capacity, have received in trust the money of others, whose forced legal agents they are and who afterwards divert the same and fail to account for it and return it when called on to do so; but its harshness, whatever it be, does not seem to have been sufficient to deter misfeasance in office and to enforce a performance of duty.   The harshness of the law can always be avoided by a deeper regard and clearer discrimination of the rights of others to property in legal custody, under the protection of a solemn oath and of implied faith and reliance.

Whatever the law be in its rigor, it is our duty to apply it as we find it on the Statute Book.   *Dura lex sed lex.*

Articles 730 and 767 of the present Code of Practice, prescribe the remedies to which parties claiming money received by sheriffs are entitled to coerce payment.

The first article refers to cases in which the money was received by sheriffs acting officially, where the proceeding is against one who actually is, or formerly was, *sheriff*, and where a judgment was rendered and the *fi. fa.* thereon returned "*nulla bona.*"

The second article refers to cases in which payment may not, as yet, have been rendered and in which the delinquent is still in office, the

penalty being not only twenty per cent interest, but removal from office ·

In either case the remedy can be claimed by rule, and where it is shown that the money was received in an official capacity, by one who has failed to account for it, that judgment was rendered for it, that execution has issued and is returned " *no property found*," the relief must be allowed.

It is clear that, as Handy was not in office when the rights of Frank & Co. were ultimately recognized by this Court, it was impossible to have proceeded against him for his removal under art. 767, C. P. It is equally evident that, if Frank & Co. could not have taken coercive steps under art. 730, C. P., that wholesome provision of the law would be a dead letter and they would have had rights which no remedy could have enforced.

It is error to suppose that Handy was entitled to a trial by jury on the rule for a *ca. sa.* In the first place he did not ask for a jury. In the second, he did not plead justification of failure to account. In the third, he would not have been entitled to a jury in a summary case, in which the law allows none. He might have asked one, in the suit for the money, as by setting up the claim *via ordinaria*, the plaintiffs had opened the door for such prayer. The proceeding by rule was liberal, fair and legal.

It cannot be claimed, from the fact that the plaintiffs did not formally ask, in the suit against Handy, that their right be recognized to enforce the judgment, when obtained, by *capias ad satisfaciendum*, that they have waived the remedy. As well might it be argued that in ordinary cases, in which a money judgment is sought against ordinary debtors, the plaintiff should specifically ask that his right to a *fieri facias* be recognized, or else that their right to the writ shall be considered as abandoned.

The law provides for different modes of executing judgments, independent of any prayer for the same, and it allows its writs, although no demand was formally made *ab initio* for them.

It is worthy of note that the remedy invoked in this instance and which was created in 1841, immediately after the abolishment of imprisonment for debt, is explicitly provided for, not only in article 730 of the present Code of Practice, but is also to be found, *ipsissimis verbis*, in two sections of the R. S. of 1870; one as No. 3444, under the heading of *Sales*, and another as No. 3613, under the title of Sheriffs; a circumstance clearly indicating the intention of the Legislature to retain that mode of coercion of payment against delinquent officials as a conspicuous feature of our legislation.

The complaint that the writ of *capias ad satisfaciendum* is not defined by any law now in force, is not founded and cannot defeat the application of the remedy sought.

The writ was once recognized in this State as one susceptible of being issued against ordinary debtors, even after judgment. Such debtors

can, even now, in certain cases, be arrested and confined until judgment. The writ which now can issue against delinquent officials is in its character and nature, in its purpose and object, the same, and is to be regulated in the same manner as that which formerly issued against ordinary debtors after judgment—with this difference, that the latter could be released from custody by making a cession to their creditors, while the former, as unfaithful depositaries, being deprived of the benefit of the acts passed for the relief of insolvent debtors continue in custody at the expense of the judgment creditor until the debt has been satisfied. R. S. sec. 1809 and sec. 92.

Under the legislation previously in existence, the judgment creditor had the right, where no property of the debtor could be found, *to apply to the clerk*, whose duty it was to deliver it to him, for an order to imprison the body of the debtor (a *capias ad satisfaciendum*) until he shall have made a cession of his property to his creditors and obtained a discharge, in conformity with the act for the relief of insolvent debtors, in confinement. Under this order, it was the duty of the sheriff to confine the body of the debtor, unless he paid the amount of the judgment with interest and costs, and unless he took the prison limits. Grenier, C. P. Art. 726, *et seq.*

In cases like the present one, the writ is issued by the clerk and is to be executed by the sheriff, if against a former sheriff, or by the coroner if against an actual sheriff, according as the defaulter is a former or an actual sheriff.

Courts of justice have, as a rule, the right and power to incarcerate officials under their control and to detain them until they have complied with their duties, as is illustrated by the provisions concerning executors and other administrators, of tutors and curators. C. P. 1011, 1012.

Article C. P. 730 is the law governing this case and it provides for the remedy to which the plaintiffs are entitled.

In conclusion, we must state, that we have made it our duty, on the reëxamination of the case, on the rehearing, to give it a more thorough consideration in view of its importance, the more so, as we had not deemed necessary to answer all the objections made to the proceeding, which was for the first time brought to judicial attention for enforcement. We might have simply adhered to our previous conclusions, but we have preferred to show that the matter had again received our serious consideration and had been once more thoroughly investigated, however prone we may be to the belief that the ruling will not prove consonant with the views of the party cast in this controversy.

We find no error either in the opinion or judgment heretofore delivered and can alter neither.

It is therefore ordered that our previous decree remain undisturbed, at the cost of appellee, who shall pay costs in both courts.

## DISSENTING OPINION.

FENNER, J. The Article 730, C. P., under which the present remedy is invoked, only authorizes it when " a judgment is rendered against a sheriff or other public officer, for money by him or them received, in his or their official capacity, and *converted to his or their own use, or not accounted for*, etc." It evidently contemplates an intentional wrong, a criminal conversion by the officer.

In the suit upon the sheriff's bond on which the judgment here was rendered, no such allegations were made or issue tendered and it cannot be said that the judgment is for money "converted to his own use or not accounted for" by the sheriff. The last words obviously mean, not such *accounting* as would exempt him from liability to the debt, but such as would excuse him from intentional wrong, of which many examples may be conceived, such as robbery, misappropriation by agents, etc. Had such issue been tendered, defendant would have been entitled to a trial by jury thereon, and I know of no provision of law under which he can be deprived of such right by a summary proceeding like that taken herein, in a matter concerning his personal liberty.

For these reasons, as well as for those contained in the original dissenting opinion herein, I dissent from the present opinion and decree.

M.. J. Poché adheres to his original dissenting opinion and also concurs in this opinion.